WALDO FERTILIZER WORKS, INC., *v.* DICKENS.

4-7220                                    177 S. W. 2d 398

Opinion delivered January 31, 1944.

748

*McKay & McKay* and *Harry B. Colay,* for appellant.

*R. W. Launius* and *Wendell Utley,* for appellee.

ROBINS, J. Appellant seeks to reverse judgment of the circuit court for appellee in an action in replevin brought by appellant for a 22-foot Howe platform scales apparatus located on the north half of lots 175 and 176 of block "R," in Magnolia, Arkansas.

The scales were installed by B. A. Warren and appellant while they were engaged in business together, a three-fourths interest in the lot being owned by Warren and a one-fourth interest therein being owned by appellant. Thereafter the partnership was dissolved and on February 22, 1939, appellant executed a warranty deed, without any reservation, conveying its one-fourth interest in this lot to Warren. On March 3, 1939, Warren and appellant signed a written agreement reciting that these scales belonged to appellant, that appellant might move them at any time and that appellant would repair any

damage done to the premises by such removal. This agreement was not acknowledged or recorded.

Warren died, and thereafter his widow, who acquired the lot and building, sold and conveyed same to C. C. Taylor for $1,190, and it is not claimed that any reservation of the scales was contained in her deed to Taylor. Taylor sold the property to appellee, and executed to appellee a warranty deed therefor, without reserving the scales. Taylor testified that Mrs. Warren advised him that the scales belonged to appellant and that he so informed appellee. Appellee denied that Taylor gave him any such information, and testified that he would not have purchased the property without the scales. Appellee was somewhat corroborated by R. W. Henderson, who testified that he helped make the trade between Taylor and appellee and that he heard nothing said by Taylor about the scales being reserved.

The building on the lot conveyed by Taylor to appellee was a one-story frame structure, with an open shed along one side. Under this shed was a pit, about two feet deep, twenty-two feet long and eight feet wide with concrete floor and walls. Over this pit was constructed the platform for the scales, which rested on iron beams, and was connected by a perpendicular rod through the floor, with the scalebeam, a horizontal bar about three feet from the floor of the house, on which bar, by moving a sliding weight until a balance was shown, the weight of the load on the platform was indicated. On the same side of the house and just above the platform there was a window through which the registration of the weight could be seen from the outside. To the rear of the scales platform there was a large sliding door in the wall of the building.

For reversal of the lower court's judgment appellant argues: First, that the scales apparatus was not so affixed to the soil or to the store building on the lot as to make same a part of the realty, and that title thereto was not, therefore, transferred by the deed of Mrs. Warren to Taylor, or by the deed from Taylor to appellee; and, second, that appellee had actual and constructive

notice, at the time of the purchase of the property, that the scales belonged to appellant, and that appellee, therefore, was not an innocent purchaser.

## I.

It is undisputed that the concrete pit was a part of the scales apparatus, and while it might be said that the platform and the metal parts of the apparatus might be removed from the lot and the building, without material damage thereto, this certainly could not be said of this concrete pit. The removal of the concrete walls and floor would leave an unsightly and potentially dangerous hole in the lot, the proper filling up of which would necessarily entail some expense. It is conceded that the removal of the rod that went through the floor would leave a small hole in the floor. The window, which afforded access to the weighing beam from the outside, was no doubt built for this special purpose and would not be suited to any other.

We have here, therefore, a situation in which apparently the building was originally constructed or afterwards altered for the purpose of having these scales become an integral part of the improvement on the lot. The question as to whether scales of this kind become fixtures or remain chattels after being erected has been considered in several jurisdictions. We think the weight of authority is to the effect that such scales, in the absence of an agreement to the contrary binding on all parties to be affected, become fixtures, and that title thereto passes on conveyance of title to the land on which they are erected.

"Platform scales fastened to sills laid upon a brick wall set in the ground, intended for permanent use, are fixtures." Thompson on Real Property, §§ 214 and 227.

In the case of *Bliss* v. *Whitney*, 85 Am. Dec. 745 (9 Allen, 114), the Supreme Court of Massachusetts held (headnote): "Platform scales are fixture when set into soil and firmly attached to a building, so that to remove them would leave an excavation under and in front of the building, and deface the room to which the weighing

apparatus was fastened; . . ." Other cases in which a similar rule was announced are: *Thompson* v. *Smith,* 111 Ia. 718, 83 N. W. 789, 50 L. R. A. 780, 82 Am. St. Rep. 541; *Dudley* v. *Foote,* 63 N. H. 57; *McGorrisk* v. *Dwyer,* 78 Ia. 279, 43 N. W. 215, 5 L. R. A. 549, 16 Am. St. Rep. 440.

"Ordinarily and apart from statute, an agreement preserving the character of an article to be annexed to the realty, which would otherwise be a fixture, or giving a right of removal with respect thereto, is not effective against a subsequent purchaser or mortgagee of the realty without notice." 36 C. J. S., Fixtures, § 18, p. 935.

Appellant cites the opinion of the court in the case of *Sessoms* v. *Ballard,* 160 Ark. 146, 254 S. W. 446, in support of its contention that these scales were not fixtures. While it is stated in the opinion in that case that a gin, grist mill and other property, including certain scales, which are not described in detail, did not constitute fixtures, an examination of this opinion discloses that this language was in the nature of *dicta* and was not necessary to the decision in the case. In that case it was undisputed that the machinery alone had been sold, and that suit involved an effort of the vendor, who, as stated, was the owner of both the soil and the machinery, to recover judgment against the vendee for the purchase money. The vendee admitted that he bought the machinery, but pleaded failure of consideration because he did not get a deed to the land on which the machinery was located. The court held that the undisputed testimony showed that the vendee did not purchase the land and that he purchased and took possession of the machinery. Since the owner of the land and the machinery had sold the machinery separately from the land, even if this machinery had constituted fixtures before such sale, it was no longer such after the sale.

In the case of *Dent* v. *Bowers,* 166 Ark. 418, 265 S. W. 636, 36 A. L. R. 443, there was involved a contest over the ownership of what was designated as a "filling station," which consisted of an underground tank and a gasoline pump attached thereto for the purpose of drawing out the

gasoline and putting it in the tanks of motor-propelled vehicles. The lot on which this apparatus was located was originally owned by Henderson, who conveyed the lot, without any reservation, to Dent. Henderson had previously executed a bill of sale for this apparatus to Hill Brothers, who sold same to Bowers, and Henderson testified that when he sold and conveyed the lot to Dent he told Dent that he had sold this apparatus to Hill Brothers. In that case Mr. Justice Wood, speaking for the court, said: "While Henderson testified that he had sold the filling station to Hill Brothers by bill of sale, it was not shown that this bill of sale was placed on record. Hill Brothers were not in possession of the property at the time of the sale by Henderson to Dent, and there was nothing to advise Dent that they were once the owners of the filling station, and that Bowers had acquired title through them. When we consider the character of the filling station and the use of same to which a part of the freehold had been, and was being, devoted at the time of the purchase thereof by Dent, the presumption, in the absence of proof, would be that the owner, Henderson, had annexed the filling station as a permanent accession to his land. 26 C. J. 666; *Choate* v. *Kimball,* 56 Ark. 55, 19 S. W. 108; *Bemis* v. *First National Bank,* 63 Ark. 625, 40 S. W. 127. See, also, *Ozark* v. *Adams,* 73 Ark. 227, 83 S. W. 920. A clear preponderance of the evidence shows that the filling station in controversy is a fixture and the title thereto in Dent, under the doctrine of the authorities above cited."

Applying the principle announced by Mr. Justice Wood in the case of *Dent* v. *Bowers, supra,* to the facts shown in the instant case, we are constrained to hold that the lower court correctly decided that the scales involved herein became a part of the freehold and that title thereto passed to appellee under the conveyance from Taylor to him, which was a warranty deed, without any restrictions or reservations.

## II.

It is next urged by appellant that, while Mrs. Warren sold and conveyed this property to Taylor and Taylor

thereafter conveyed same to appellee, the undisputed evidence established that Taylor was in reality the agent of appellee, and, therefore, since Taylor admitted that he was advised that the scales in dispute belonged to appellant, the conclusion necessarily follows that appellee had notice that the scales were not conveyed by the deed to him. It is not disputed that appellee advanced the money necessary to consummate the purchase of the lot from Mrs. Warren; and appellant cites numerous decisions to the effect that, where one advances the purchase price but deed is taken in the name of another, a resulting trust arises in favor of the person so advancing the purchase money. But we are not referred to any decisions that hold that in such a case the person who buys the property becomes the agent of the one advancing the purchase money so as to authorize such purchaser to contract for the latter. In such a case the first purchaser becomes the trustee of the party who advances the money, but this relationship does not clothe him with the powers of an agent. In the case of *Taylor* v. *Mayo,* 110 U. S. 330, 4 S. Ct. 147, 28 L. Ed. 163, the Supreme Court of the United States said: ''A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest or power in or affecting property is vested for the benefit of another.''

In the case at bar it is stipulated that ''B. A. Warren died on February 16, 1940, and his wife became the owner of the lot and that she sold said lot to C. C. Taylor, and that J. H. Dickens is now the owner thereof by virtue of purchase from C. C. Taylor.'' Mrs. Warren testified that she did not have any negotiations with appellee and did not know that appellee was the purchaser of the property. Mrs. Warren was paid $1,190 when she conveyed the property to Taylor. There was no evidence whatever that appellee held Taylor out as his agent or did any act from which the creation of an agency could be inferred. Under the circumstances, we hold that the testimony failed to establish that Taylor was appellee's agent.

Appellant also contends that appellee had actual and constructive notice that the scales did not constitute fixtures, and that, under the circumstances, it was his duty to inquire as to the ownership of the scales before purchasing the property. While Taylor testified that he told appellee at the time the trade for the property was made that appellant owned the scales, appellee in his testimony denied this and stated that he would not have bought the property if he had not believed that the scales were a part thereof. Taylor's testimony is somewhat contradictory in that at one time he stated that he did not tell appellee that appellant owned the scales until after appellee bought the property. Since the judgment of the lower court was in favor of appellee, we must assume that the court found that appellee's version of the matter was true. This finding, based as it is on substantial testimony, is binding on us. Since these scales, because of the manner and purpose of their annexation to the soil, became fixtures, there was no constructive notice to appellee that they were not a part of the realty, and no duty to make inquiry as to the ownership thereof devolved upon appellee.

No error appearing, the judgment of the lower court is affirmed.